**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAMELA ANN SORRELLS** | § | Case No. 20-20100 |
| SSN: xxx-xx-2826 | § | |
| 100 CR 1340, Linden, TX 75563 | § | Chapter 7 |
| | § | |
| **Debtor** | § | |
| _____ | § | |
| NATIONWIDE JUDGMENT | § | |
| RECOVERY, INC. | § | Adversary No. 20-02004 |
| | § | |
| **Plaintiff** | § | |
| | § | |
| v. | § | |
| | § | |
| PAMELA ANN SORRELLS | § | |
| | § | |
| **Defendant** | § | |

## RESPONSE OF PAMELA ANN SORRELS IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant Pamela Ann Sorrells ("Sorrells") files her Response to Plaintiff's Motion for Summary Judgment. Plaintiff contends that the scope of 11 U.S.C. § 523(a)(19) is inclusive to ensnare any party, however slight the relationship, to a financial fraud. This reasoning guides Plaintiff's recommendation that nondischargeability pursuant to § 523(a)(19) is the proper penalty.

**The Evidence in Support of Motion is Insufficient to Support Summary Judgment**

1. Sorrells was one of approximately 700,000 participants, in multiple countries, in a multi-level marketing enterprise know as ZeekRewards.com. The true purpose of this business was known only to the management insiders who formed and operated what was actually a massive Ponzi and pyramid scheme. There were many victims of the ZeekRewards ("Zeek") scheme including Sorrells. She was a member of a group of some 9,000 participants in Zeek deemed as a "Net Winner," meaning she received

1

more money than she paid into Zeek.[1] In the list of 6,861 (U.S. participants only), the range of profit, among the participants, ranges from approximately $1,000.00 to individual participants that received hundreds of thousands of dollars. A few participants received more than one million dollars. The huge discrepancies among the participants illustrates some necessary context that only a very small number of the participants were the actual perpetrators (the "Perpetrators") of the schemes and were aware that their actions were in violation of federal and state securities statues. They sought to appeal to the less sophisticated and to the unwary. The S.E.C. stated, in a Complaint filed against the Perpetrators in U.S. District Court for the Western District of North Carolina that, "Defendants have not made any effort to determine if investors in fact have the financial wherewithal to invest, nor have they ever made any effort to determine if investors have any experience investing before investors commit any capital to ZeekRewards."**(Exhibit A, ¶ 18)**

2. Plaintiff argues that there is a strong "guilt by association" link between the Defendant Sorrells and the small number of the Rex Venture Group, LLC owners and managers. The latter being the planners and plotters of the ZeekRewards.com schemes. This association ties the exception from discharge under § 523(a)(19) to the fraudulent funds received by "net winners" such as Ms. Sorrells. This is despite the fact that she had no involvement with Zeek other than as a participant, as were approximately 700,000 other participants.

3. Plaintiff asserts that Sorrells "knowingly participated in a Ponzi scheme," but offered no evidence to that specific assertion other than she was deemed a "net winner." In the S.E.C. complaint against defendants, Rex Venture Group, LLC, ZeekRewards.com, and Paul R. Burks, stated "Defendants also fail to inform investors of the substantial risk that the Matrix is prone to collapse if the promoters are unable to recruit ever-increasing numbers of paid affiliates into the Matrix pyramid, because without new investors there will be no source of revenue to pay existing participants in the scheme. **(Exhibit A, ¶ 51)** Sorrells was a "participant' in the Zeek Ponzi schemes, but she was not a Perpetrator of the schemes.

4. Plaintiff correctly observes that some courts have adopted the "Ponzi scheme presumption" which presumes "actual fraudulent intent" once it is shown that a Ponzi

---

[1] Bell v Disner, 2014 Dist. LEXIS 170081

scheme exists. In a strikingly similar fact pattern to the present case, a New Mexico Bankruptcy Court recently held, "There is no genuine issue of material fact that ZeekRewards operated as a Ponzi scheme. Accordingly, the law considers transfers from the scheme to be fraudulent transfers that may be avoided under the North Carolina Uniform Fraudulent Transfer Act. Plaintiff's reliance is misplaced, the Ponzi scheme presumption applies only to the intent of the Ponzi scheme perpetrators, not to the intent of the people they lure into the scheme."[2]

5. Sorrells had no inkling that there was anything nefarious with Zeek. She primarily participated in a "penny auction" website where merchandise could be bid on, won or to possibly purchase for a significant discount. She found the auctions to be entertaining and that it sometimes resulted in her ability to purchase household products at a discount.[3]

6. Plaintiff implies that Sorrells failure to seek and review financial statements of Rex Venture Group, LLC, must be an indication of an awareness of the Zeek Ponzi Scheme. Sorrells has no experience with, nor possesses the sophisticated for, the evaluation corporate financial statements. She has a high school education and has primarily been employed in clerical positions. She currently is employed by Cass County, Texas.[4]

7. The North Carolina District Court failed to consider the nondischargeability of the "net winners" defendants, pursuant to 11 U.S.C. § 523(a)(19). Instead, the Court found that the NCUFTA[5] allows a receiver to avoid transfers made with the intent to hinder, delay, or defraud any creditor of the debtor within four years after the transfer was made. The Court observed that many courts have held that the intent to defraud can be presumed when transfers are in furtherance of a Ponzi scheme, and that the Ponzi presumption is analogous to the fraudulent transfer avoidance of a trustee under Bankruptcy Code Section 548(a)(1)(A).[6]

---

[2] <u>Nationwide Judgement Recovery, Inc. v. Grimaldo</u>, 2021 Bankr. LEXIS 2281
[3] Defendant's Responses to Plaintiff's Requests for Admissions, ¶ 26 and 27
[4] Defendant's response to Plaintiff's Interrogatories, ¶ 7
[5] North Carolina Uniform Fraudulent Transfer Act
[6] <u>Bell v. Disner</u>, 206 U.S. Dist. LEXIS 164368, * 34

*Discussion of 11 U.S.C. § 523(a)(2)(A)*

8. Not all fraud is included within the exception of section 523(a)(2)(A). Only those that involve the obtaining of money, property, or services by *false pretenses or false representations*. These frauds include moral turpitude or intentional wrong. To except a debt from discharge under this section, the false representations giving rise to the debt must have been must have been knowingly and fraudulently made.[7] It's also necessary that the injured party justifiably relied on the representation and that such reliance was justified under the circumstances.[8] Defendant was one of hundreds of thousands of individuals that participated in the ZeekRewards schemes. There is no evidence of Sorrells having any role in its formation, management, or control. The complaint filed, by the Securities and Exchange Commission, against Rex Venture Group, LLC d/b/a ZeekRewards.com and Paul R. Burks, observed that the "Qualified Affiliates have no role in ZeekRewards' operations;" and, "Unbeknownst to its investors, ZeekRewards is, in reality, a massive Ponzi and pyramid scheme."[9] Sorrells was a Qualified Affiliate in the ZeekRewards.com schemes. Ponzi schemes succeed by projecting an illusion that its participants are making legitimate income from its operation when in reality, the "legitimate income" is actually being generated from the newer participants and not from the business operation itself. "The insiders realized that not paying Affiliates, even once, was not an option if they wanted to keep the scheme going."[10]

9. Plaintiff argues that Sorrell's actions constitute "actual fraud" under section 523(a)(2)(A). Actual Fraud consists of deceit, artifice, trick or design involving direct and active operation of the mind to cheat or deceive another.[11] To have a debt excepted from discharge pursuant to the "actual fraud" provision of 11 U.S.C. § 523(a)(2)(A), an objecting creditor must prove that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor justifiably relied on such representations; and (5) the creditor sustained losses as a proximate result of the representations.[12]   Plaintiff has not

---

[7] *In re* Allison, 960 F.2d 481 (5th Cir. 1992)
[8] *In re* Apostle, 467 B.R. 433, 443 (Bankr. W.D. Mich. 2012)
[9] Western District of North Carolina, Charlotte Division, 3:12-cv-519
[10] 206 U.S. Dist. LEXIS 164368, * 19
[11] RecoverEdge L.P. v. Pentecost, 44 F.3d 1284 (5th Cir. 1995)
[12] In re Minardi, 536 B.R. 171, 188.

presented any evidence that Sorrells encouraged others to join ZeekRewards, nor did she sign-up down-stream participants. There is no evidence presented that Sorrells made representations to anyone. Plaintiff has not established how any of her actions have met the definition of "actual fraud." Instead, Plaintiff argues that the "net winner" status of Sorrells, automatically places her in violation of §523(a)(19), and from that flows the *presumption* of actual fraud satisfying §523(a)(2)(A).

Plaintiff's examples of *transfers in furtherance of a Ponzi scheme gives rise to inferred intent of **actual fraud*** have a common fact pattern: the defendants in the cases cited are actually perpetrators of the Ponzi scheme.[13] Sorrells was not a perpetrator of the ZeekRewards Ponzi scheme.

### The Evidence is sufficient to Raise a Genuine Issue of Material Fact Regarding the Case

### Discussion of 11 U.S.C. § 523(a)(19)

10. In 2002, the U.S. Congress passed new legislation known as The Sarbanes-Oxley Act ("SOX"). It was a response to a series of corporate and financial fraud cases that involved high profile public corporations and their lack of proper financial disclosure. Its goal was to protect investors by improving accuracy and reliability of corporate disclosures made pursuant to securities laws. SOX sections 801 – 807, are collectively known as "The Corporate and Criminal Fraud Accountability Act of 2002." Section 801 of the Act dealt with the wrongdoing of the individuals that were behind corporate or financial frauds. It added paragraph (19) to section 523(a) of the Bankruptcy Code.[14] The purpose of the addition of paragraph (19) was to close a perceived loophole in the Code that may permit securities law violators to discharge their obligations under court judgments or settlements. The Ninth Circuit drew a distinction: "Congress enacted this section to target those parties who are guilty of securities violations, in order to ensure that judgments for securities violations are treated, in bankruptcy, like judgments for fraud."[15] The court further reasoned that: "...if it adopted the interpretation of § 523(a)(19) of an innocent recipient of funds obtained by another party's participation in a securities violation can not only be ordered to

---

[13] Janvey v. Brown, 767 F.3d 430 (5th Cir. 2014); In re Whitley 463 B.R. 775; In re Cohen, 199 B.R. 709 (9th Cir. BAP 1996).
[14] Pub. L. No. 107-204, § 803, 116 Stat. 745-801.

disgorge, but must also continue paying off that debt even if he becomes insolvent and is forced to file for bankruptcy. Although we do not dispute the conclusion that a court may order recipients of these funds to disgorge any funds that remain in their possession, <u>we do not think Congress wanted to immunize these debts from discharge in bankruptcy, when the debtor has not been found guilty of any wrongdoing.</u>"[16]

11. The merits of the § 523(a)(19) discharge exception are indistinguishable from the merits of the underlying legal claim. This is different from other sections under § 523. Unlike the other subsections, which are establish exceptions to discharge defined by elements specified in the Bankruptcy Code, the 523(a)(19) discharge exception is defined, at least in part, in terms of claims established under specified non-bankruptcy statutes.[17] A further significant aspect is that determination of dischargeability under 523(a)(19) is not committed exclusively to the bankruptcy court by 11 U.S.C. § 523(c).[18] For instance, the U.S. District Court for the Western District of North Carolina did not decide applicability of the dischargeability issue in the ZeekRewards case, although it could have done so.

Ms. Sorrells was not a "named defendant" in the ZeekRewards case. There was a judgment entered against her for the funds which she received in excess of her payments into the scheme. The funds were essentially fraudulent transfers as there never were any actual *winnings*. The court ordered that the fraudulent transfers must be disgorged and repaid. Ms. Sorrells owes a debt and has filed a bankruptcy case in order to discharge the debt.

### Conclusion

Plaintiff argues that once that a fraudulent transfer has occurred in violation of state or federal security law, the application of the 11 U.S.C. § 523(a)(19) nondischargeability is a *fait accompli*. That may be a proper result in certain cases. Some of the more famous examples would include Enron, Worldcom, and Stanford Financial Group. The individual perpetrators behind these frauds became household names and most certainly deserved the punishment that they received. A fair reading of the cases submitted by both parties suggests that § 523(a)(19) is meant for the planners and perpetrators of financial frauds.

---

[15] *In Re Sherman*, 656 F.3d 1009
[16] Id. at 1016
[17] *In re Chan*, 355 B.R. 494, 503

Sorrells was unjustly enriched from the ZeekRewards Ponzi schemes. She was a participant and not a perpetrator of the schemes. There have not been any material facts presented by Plaintiff other than she was a "net winner" from the ZeekRewards schemes. This Bankruptcy Court is the proper venue to hear the evidence against and for this defendant and then decide the non-dischargeability charge brought against her.

WHEREFORE, Defendant prays that the Court deny the Plaintiff's motion for Summary Judgment.

DATED: November 2, 2021.

        Respectfully submitted,

        GORDON MOSLEY
        4411 Old Bullard Rd., Suite 700
        Tyler, Texas 75703
        (903) 534-5396  / FAX (903) 581-4038
        gmosley@suddenlinkmail.com


BY: **/s/ Gordon Mosley**
    GORDON MOSLEY SBN: 00791311
    ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

   The undersigned hereby certifies that on <u>November 2, 2021</u>, a true and correct copy of the foregoing Defendant's Objection was served on the following parties:

**CHAPTER 7 TRUSTEE**
Ms. Diane Carter
600 N. Central Expressway
Suite 1010
Plano, Texas 75074

**COUNSEL FOR PLAINTIFF**
Mr. Mark Stromberg
Stromberg Stock
8350 N. Central Expressway, Ste. 1225
Dallas, Texas 75206

                                      **/s/ Gordon Mosley**
                                      GORDON MOSLEY