**EOD**

09/27/2022

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAMELA ANN SORRELLS** | § | Case No. 20-20100 |
| | § | |
| | § | |
| Debtor | § | Chapter 7 |
| | § | |

| | | |
|---|---|---|
| NATIONWIDE JUDGEMENT | § | |
| RECOVERY INC., | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 20-2004 |
| | § | |
| PAMELA ANN SORRELLS | § | |
| | § | |
| Defendant | § | |

## <u>MEMORANDUM OF DECISION</u>

The main question presented in this decision is whether Debtor, as

opposed to a third party, must have committed either a violation of securities

law, or common law fraud in connection with the purchase or sale of a security,

for a debt owed to be excepted from discharge under 11 U.S.C. § 523(a)(19).  The

Court is also asked to determine whether Plaintiff, Nationwide Judgment

Recovery Inc., (the "Plaintiff") is entitled to its summary judgment on its cause

of action alleging that Defendant committed actual fraud in violation 11 U.S.C. §

523(a)(2)(A).  For the reasons explained in this memorandum the Court finds

1

that "Nationwide Judgement Recovery, Inc.'s Motion for Summary Judgement"
(the "Motion") filed by Plaintiff on September 9, 2021, should be **DENIED.**

## I.  Jurisdiction

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334
and 157.  The Court has the authority to enter a final judgment in this
adversary proceeding because it constitutes a statutorily core proceeding
pursuant to 28 U.S.C. § 157(b)(2)(A), (I), and (J), and meets all constitutional
standards for the proper exercise of full judicial power by this Court.

## II.  Facts and Procedure

Pamela Sorrells (the "Defendant"), the debtor in this case, is an individual
residing in Linden, Texas.[1]  Defendant was an investor in a website called
ZeekRewards.com ("ZeekRewards").  ZeekRewards presented itself as a penny
auction website but was in fact an elaborate Ponzi Scheme.  Defendant was only
one of approximately 700,000 people who invested in the ZeekRewards scheme
worldwide.[2]  Defendant maintains she had no idea that ZeekRewards was a
Ponzi scheme.[3]

Defendant, unlike the majority of victims of the scam, was one of the few
who received a return on her investment in the scheme.[4]  Defendant invested a

---

[1] Def. Obj, ECF No. 20 at 1
[2] *Id.*
[3] *Id.* at 2.
[4] *Id.* at 1-2.

2

total of \$1,570.65 into ZeekRewards.[5]  She received in return a total of

\$32,7520.40.[6]  The class of investors which actually profited from the scheme are

referred to as "net winners."[7]  Only 9,000 of the approximately 700,000 total

investors, including Defendant, were net winners.[8]

Rex Venture Group, LLC d/b/a ZeekRewards.com and Paul R. Burks, its

principal, were the operators of the Ponzi scheme.[9]  On August 17, 2012, the

Securities and Exchange Commission (the "SEC") filed an action against

ZeekRewards and Burks to shut down the website and attempt to recover the

invested funds (the "SEC Action").[10]  The SEC alleged that ZeekRewards and

Burks had committed numerous violations of the Securities Act of 1933 and the

Securities Exchange Act of 1934.[11]  The SEC also alleged that investors in

ZeekRewards were unaware that the operation was in fact "a massive Ponzi and

pyramid scheme."[12]  Importantly for this case, the SEC stated that the investors

in this scheme had played "no role in ZeekRewards' operations" and that

ZeekRewards and Burks alone operated the scheme.[13]  Similarly, the SEC

believed that the investors had no part in assigning any payments of winnings.[14]

---

[5] Pl. Mot. Summ. J., ECF No. 19 at 6.
[6] *Id.*
[7] DefObj., ECF No. 20 at 1.
[8] *Id.* at 1.
[9] Pl. Mot. Summ. J., ECF No. 19 at 2.
[10] *Id.*
[11] *Id.* at exhibit F.
[12] *Id.* at exhibit F, pg. 2.
[13] *Id.* at exhibit F, pg. 10.
[14] *Id.* at exhibit F, pg. 11-12.

ZeekRewards and Burks did not contest the SEC's allegation that their operation was in fact a Ponzi scheme.[15]  They also did not contest the SEC Action in general and consented to a judgement enjoining them from any further violations of federal securities law.[16]  Defendant was never a defendant or participant in the SEC Action.[17]

As a result of the SEC Action, Kenneth Bell was appointed as receiver for the estate of ZeekRewards and Burks.[18]  He was later succeeded in this role by Matthew E. Orso.[19]  Once the receivership was put into place in 2016, the receiver filed Case 3:14-cv-91, *Bell v. Disner, et. al.,* in the United States District Court for the Western District of North Carolina, Charlotte Division, as a class action suit against the "net winners" (the "Receiver Class Action").[20]  The Receiver Class Action was filed to recover the profits earned by the net winners.[21]  This suit was successful, and the receiver obtained fraudulent transfer judgements against all "net winners" including Defendant for investment returns received from the scheme.[22]  The fraudulent transfer judgement against Defendant was for a total of $41,875.07 and remains

---

[15] *Id.* at exhibit C, pg. 20.
[16] *Id.* at exhibit C, pg. 2.
[17] *Id.* at exhibit F, pg. 1-2.
[18] Pl. Compl. ECF No. 1 at 3
[19] *Id.* at 2.
[20] Pl. Mot. Summ. J., ECF No. 19 at 2.  The court in *Bell v. Disner, et. al.,* made numerous findings about the factual background underpinning the judgment against Defendant relevant to this proceeding.  *Id.* at exhibit C, pg. 1-19.
[21] *Id.* at 3.
[22] *Id*

unpaid.[23]  On May 30, 2019, the ZeekRewards receiver assigned the judgement against the net winner class to Plaintiff.[24]  Nationwide Judgement Recovery, Inc. was founded in 2019 and has its principal place of business in California.[25]

On May 6, 2020, Defendant filed a voluntary Chapter 7 bankruptcy petition, primarily seeking to discharge the fraudulent transfer judgement against her from the Receiver Class Action.[26]  Defendant received a discharge in her bankruptcy case on November 25, 2020.[27]  Plaintiff filed this adversary proceeding on November 20, 2020.[28]  The complaint seeks a declaration that Defendant's debt to Plaintiff is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(19).[29]  On December 28, 2020, Defendant filed her answer to the complaint and asked the Court to deny the relief requested.[30]  Plaintiff filed the Motion on September 8, 2021.[31]  Defendant filed her objection to the Motion on November 2, 2021.[32]  Plaintiff filed a reply to Defendant's objection on November 16, 2021.[33]

---

[23] *Id.*
[24] *Id.* at exhibit E.
[25] *Id.*
[26] Debtor's Voluntary Chapter 7 Petition, Case No. 20-20100 ECF No. 1.
[27] Order Discharging Debtor, Case No. 20-20100 ECF No. 12.
[28] Pl. Compl, ECF No. 1.
[29] *Id.* at 1.
[30] Def. Ans., ECF No. 8.
[31] Pl. Mot. Summ. J., ECF No. 19.
[32] Def. Obj., ECF No. 20.
[33] Pl. Reply to Def. Obj., ECF No. 21.

### III. Summary Judgement Standard

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c). FED. R. BANKR. P. 7056 incorporates FED. R. CIV. P. 56 to apply to adversary proceedings. Thus, if summary judgment is appropriate, the Court may resolve the case as a matter of law.

The moving party always bears the initial responsibility of informing the court of the basis for its motion and producing evidence which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of proof at trial. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1077 n.16 (5th Cir. 1994). "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire and Cas, Co.*, 585 F.3d 206, 210 (5th Cir. 2009). "All reasonable inferences must be viewed in the light most favorable" to the nonmoving party, and "any doubt must resolved in favor of the nonmoving party." *In re Louisiana Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (citing *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## IV. Should Defendant's Late Objection to the Motion Be Considered?

The Court first addresses Plaintiff's argument that Defendant's objection to the Motion should not be considered because it was filed late. Local Rule 7056-1(b), and the scheduling order in this case, both require a response in opposition to a motion for summary judgment to be filed within 28 days of the filing of the motion. Defendant failed to meet this deadline and its response in opposition included no explanation for this failure.

The Court has "broad discretion in interpreting and applying [its] own local rules adopted to promote efficiency in the court." *Bonner v. Adams (In the Matter of Adams)*, 734 F.2d 1094, 1102 (5th Cir. 1984). No trial is yet set in this case, and the Court had taken no action on the Motion at the time the Defendant's response in opposition was filed. The Court finds no prejudice to Plaintiff caused by the delay. Due to the discretion afforded to the Court when applying its own local rules and the lack of any apparent prejudice, the Court will consider Defendant's late response in opposition. *See Marrama v. Citizens Bank of Massachusetts (In re Marrama)*, 549 U.S. 365, 375 (2007) (approving bankruptcy court's use of equitable powers to deny a conversion to avoid administrative process which would end up in the same place)); *see also Bywaters v. Alhuneidi (In re Alhuneidi)*, 632 B.R. 737, 740 (Bankr. E.D. Tex. 2021) (this Court used its broad discretion to overlook a defendant's failure to comply with a local rule when the failure did not harm plaintiff).

7

## V.  Is Defendant's Debt Nondischargeable
## Pursuant to Under 11 § U.S.C. 523(a)(19)?

11 § U.S.C. 523(a)(19) makes debts arising from violations of securities

laws nondischargeable.  The provision specifically states that a debt will be

nondischargeable if it:

> (A) is for (i) the violation of any of the Federal securities laws (as
> that term is defined in section 3(a)(47) of the Securities Exchange
> Act of 1934), any of the State securities laws, or any regulation or
> order issued under such Federal or State securities laws; or (ii)
> common law fraud, deceit, or manipulation in connection with the
> purchase or sale of any security; and (B) results, before, on, or after
> the date on which the petition was filed, from (i) any judgment,
> order, consent order, or decree entered in any Federal or State
> judicial or administrative proceeding; (ii) any settlement agreement
> entered into by the debtor; or (iii) any court or administrative order
> for any damages, fine, penalty, citation, restitutionary payment,
> disgorgement payment, attorney fee, cost, or other payment owed by
> the debtor.

11 § US.C. 523(a)(19).  In essence, § 523(a)(19) makes a debt

nondischargeable if two conditions are met.  First, the debt must be for a

violation of state or federal securities law, or for common law fraud, deceit,

or manipulation in connection with a sale of any security.  *Id.*  Second, the

debt must result from a judgement or court order.  *Id.*

It is undisputed that the second element of this test under § 523(a)(19)(B)

is met in this case because the debt owed to Plaintiff arises from a judgment.[34]

Regarding the first element under § 523(a)(19)(A), can Plaintiff show that its

judgment either arose from a violation of state or federal securities law, or that

---

[34] Pl. Mot. Summ. J., ECF No. 19 at 5.

its judgment is for common law fraud, deceit, or manipulation in connection with the sale of any security?  The facts appear clear that Defendant was not the person operating the ZeekRewards scheme nor the person committing securities violations.  Rather, Defendant appears to have only benefitted from the violations committed by others.[35]  The question is thus whether a debt falls within the scope of § 523(a)(19)(A) and is "for" a securities law violation when the debt stems from a violation not committed by the Debtor.  Plaintiff argues that a debtor's personal culpability is irrelevant so long as the judgement arises from a securities violation.  Defendant argues that a debtor must be personally culpable for the violation for § 523(a)(19)(A) to be met.  Currently, circuits are split on this question, and no ruling has been made by the Fifth Circuit to bind this Court's analysis.

The majority view, adopted by both the Ninth and Tenth Circuits, is that a debt is only "for" a securities law violation, and thus within the scope § 523(a)(19)(A), if the debtor was found to have been the one who committed the violation.  In *Sherman*, the Ninth Circuit considered "whether a debt can be 'for' one of the violations listed in § 523(a)(19)(A) when the debtor has not committed any of those violations."  *In Re Sherman*, 658 F.3d 1009, 1012 (9th Cir. 2011).  At issue was a lawyer who, as part of an SEC enforcement action, had been ordered to disgorge money prepaid to him but not fully earned by the end of litigation.

---

[35] *Id.*

*Id.* at 1010.  Importantly, the SEC conceded that the debtor had not "committed any securities violations."  *Id.* at 1010-11.  In its analysis the Ninth Circuit founds that the meaning of § 523(a)(19) was ambiguous.  *Id.* at 1012-13, 1015.  Thus, the *Sherman* court used two important goals of the bankruptcy code to help discern the meaning of the statute.  These goals were: "(1) ensuring an equitable distribution of the debtor's assets to his creditors and (2) giving the debtor a 'fresh start.'"  *Id.* at 1015.  It also considered the Supreme Court's dictate that exceptions to discharge should be construed narrowly and in favor of the debtor and recognized that the bankruptcy code "limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'"  *Sherman*, 658 F.3d at 1015, citing *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991).  The *Sherman* court reasoned that these principles meant that exceptions to discharge should be "limited to dishonest debtors seeking to abuse the bankruptcy system in order to evade the consequences of their misconduct."  *Sherman*, 658 F.3d at 1015.  It therefore ruled that: "11 U.S.C. § 523(a)(19) prevents the discharge of debts for securities-related wrongdoings only in cases where the debtor is responsible for that wrongdoing.  Debtors who may have received funds derived from a securities violation remain entitled to a complete discharge of any resulting disgorgement order."  *Id.* at 1019.

The Tenth Circuit also considered this question in a case with facts like the present case.  In *Wilcox*, the Oklahoma Department of Securities asked the bankruptcy court to find that distributions from a Ponzi scheme paid to the

debtors and the resulting judgement against them were nondischargeable. *Oklahoma Dept. of Securities, ex. Rel Faught v. Wilcox*, 691 F.3d 1171, 1173 (10th Cir. 2012). The *Wilcox* court found the statute was unambiguous and ruled that a debt is only "for" a securities law violation if defendant violated securities law. *Id.* at 1174-75. The debtors in *Wilcox* were never accused or found guilty of violating any securities laws and were only found to have been unjustly enriched by actions of a third party. *Id.* at 1176-77. Reviewing the statutory language, the *Wilcox* court found that discharging the debt was proper because "permitting debtors, who were not personally found to be in violation of securities laws, to obtain relief from a judgment intended only to redistribute funds among multiple victims of a Ponzi scheme is in accordance with the plain language of the statute." *Id.* at 1177. To adopt the opposing interpretation was impossible because, while convenient, "the language of the statute cannot reasonably be stretched that far." *Id.*

The *Lunsford* decision exemplifies the opposing view that a debtor need not have violated securities law for § 523(a)(19) to prevent discharge of a debt arising from another party's violation. *Lunsford v. Process Technologies Servs. (In re Lunsford)*, 848 F.3d 963 (11th Cir. 2017). In *Lunsford*, an arbitrator ruled against a debtor and found he had committed several securities violations. *Id.* at 965-66. Later, the bankruptcy court upheld the arbitrator's findings and stated that "the arbitration award constituted a judgment for a violation of securities laws against [debtor] because there is a determination outside the

11

Bankruptcy Court that [debtor] violated securities laws and because the state courts confirmed the arbitration award." *Id.* at 966. On appeal, the Eleventh Circuit found that the arbitrator's decision was sufficient for the bankruptcy court to find that the debtor had committed a securities violation and found § 523(a)(19) prevented the discharge of his debt. *Id.* at 967. The Eleventh Circuit in the alternative ruled that § 523(a)(19) rendered a debt nondischargeable regardless of a debtor's conduct so long as a "securities law violation caused the debt." *Id.* at 968. The Eleventh Circuit reasoned that Congress has limited other exceptions to discharge based on a debtor's conduct, so "[i]f Congress had wanted to limit section 523(a)(19)(A) based on debtor conduct, it could have done so as it did with other provisions in the statute." [36] *Id.*

The Eleventh Circuit considered the Tenth Circuit's decision in reaching the opposite conclusion. The Eleventh Circuit rejected the Tenth Circuit's *Wilcox* decision without truly considering its merits and explained that the different circumstances in *Wilcox* made that decision inapplicable. Specifically, the Eleventh Circuit said the following:

> After Oklahoma obtained judgments for *unjust enrichment against investors in a Ponzi scheme*, the Tenth Circuit held that the debtors could discharge their debts because the judgments at issue were *not for a violation of securities laws* but for unjust enrichment resulting

---

[36] Some of the examples the court used to demonstrate this are as follows: "for willful and malicious injury by the debtor to another entity" § 523(a)(6); "for death or personal injury caused by the debtor's operation of a motor vehicle" § 523(a)(9); "obtained by use of a statement in writing ... that the debtor caused to be made or published" § 523(a)(2)(B)(iv); "for a tax or a customs duty with respect to which the debtor made a fraudulent return" § 523(a)(1)(C)." *Id.*

from *someone else's violation of those statutes*. In contrast, Lunsford's debt does not arise from a judgment against him for unjust enrichment. Lunsford was a party to the same decision in which the state courts entered a judgment against MIPCO for a violation of securities laws (emphasis added).

*Id.* at 968-69. The present case has more in common with *Wilcox* than *Lunsford*. Defendant, like the defendants in *Wilcox,* has not been found to have committed a securities law violation.[37]

The *Lunsford* court also reviewed the Ninth Circuit's decision in *Sherman*. In its discussion of the case, the Eleventh Circuit disagreed with the basic principles relied upon by the Ninth Circuit.[38]  *Id.* at 969. Specifically, it departed "from the Ninth Circuit because it grounded its decision on precedent that does not bind us and followed prescriptions of general statutory purpose over the text." *Id.* This Court declines to follow this characterization of *Sherman*. The Supreme Court in *Grogan v. Garner* has clearly articulated that providing a "fresh start" to "honest but unfortunate debtors" is a "central purpose of the [bankruptcy] code." *Grogan v. Garner,* 498 U.S. 279, 286-87 (1991). For this reason and the factual differences between *Lunsford* and the present case, this Court does not find *Lunsford* particularly persuasive.

---

[37] Only Burks and ZeekRewards were charged with security law violations.  Pl. Mot. Summ. J., ECF No. 19 at 2.
[38] The 11th Circuit specifically stated that the 9th Circuit ruled as it did to "Further the supposed 'purpose' of the Bankruptcy code to allow a 'fresh start' and to protect 'the honest and unfortunate debtor.'" *Id.*

Consequently, this Court agrees with the majority and holds that §

523(a)(19)(A) only applies to except from discharge debts owed by debtors who

themselves committed a securities violation.  To adopt Plaintiff's reading of §

523(a)(19)(A) would require a broad reading of the statute contrary to its plain

language and to the principal that exceptions to discharge are construed

narrowly in favor of debtors.  *Matter of Miller (In Re Miller)*, 156 F.3d 598, 602

(5th Cir. 1998).  There is a difference between a debtor who actively perpetrates

or knowingly takes advantage of a Ponzi scheme, and a debtor who unwittingly

invests in such a scam.  Plaintiff has failed show that no material issue of fact

exists that Defendant was the former, and so summary judgement cannot be

granted as Plaintiff requests.

## VI.  Did Defendant Commit Common Law Fraud in Connection with the Sale or Purchase of a Security?

In the alternative, Plaintiff argues that its debt is nondischargeable

because Defendant committed common law fraud in connection with the

purchase or sale of a security.  11 U.S.C. § 523(a)(19)(A)(ii).  This claim is

without merit because there is no summary judgment evidence to suggest

Defendant has committed common law fraud in connection with the purchase

sale of a security.  Plaintiff relies on the previous state court summary

judgement order in *Bell v. Disner* to attempt to show a prior finding that

Defendant committed fraud in connection with the purchase or sale of a security.

A nearly identical motion for summary judgement involving the same Ponzi

14

scheme and the same Plaintiff was recently litigated in another bankruptcy

court which succinctly dismissed this argument. *National Judgment Recovery*

*Inc. v. Simons,* Adv. No. 21-4027, 2021 WL 5225940 (Bankr. D. Minn. Nov. 9,

2021). As the *Simons* court put it:

> There is nothing in the Summary Judgment Order stating that
> Defendant committed a securities violation or that the underlying
> fraudulent transfers were in connection with *the purchase or sale of*
> *any securities*. The Summary Judgment Order is an order on a
> fraudulent transfer action. If it concerned a securities violation, the
> transactions would have been voidable in their entirety. Defendant
> and other Net Winner Class members would have been required to
> return all the funds they derived from the Ponzi scheme, not just
> net winnings. The Final Judgment is for Defendant's net winnings,
> not for the full amount he received from the Ponzi scheme. The
> Summary Judgment Order and Final Judgment are based on
> fraudulent transfers under the NCUFTA and do not indicate that
> the transfers involved *a security or were in connection with the*
> *buying or selling of securities*.

*National Judgment Recovery Inc. v. Simons,* Adv. No. 21-4027, 2021 WL

5225940, at *8 (Bankr. D. Minn. Nov. 9, 2021) (emphasis added). Notably,

this is not the only bankruptcy court that has dealt with this exact claim

brought by this exact Plaintiff. All similar decisions this Court reviewed

reach the same conclusion that there was no finding in *Bell v. Disner* that

the individuals in the Net Winner Class committed common law fraud nor

that there was a transaction involving the purchase or sale of a security.

*In re Holtz*, Adv. No. 20-01043, 2021 WL 5596413, at *4-5 (Bankr. S.D.

Ohio Nov. 17, 2021); *In re Geredine*, 632 B.R. 502, 505 (Bankr. E.D. Mich.

2021)("To date, no court has found or concluded that [d]efendant herself

committed any securities law violation or any securities fraud. The court

in the *Disner* case did not make any such findings or conclusions.")

Neither does this Court see  any such findings or conclusions in *Bell v.*

*Disner* to warrant summary judgment for Plaintiff against Defendant

under § 523(a)(19)(ii).

## VII.  Is Defendant's Debt Nondischargeable Pursuant to 11 § U.S.C. 523(a)(2)(A)?

11 U.S.C. § 523 (a)(2)(A) excepts from discharge debts obtained by "false

pretenses, a false representation, or actual fraud, other than a statement

respecting the debtor's or an insider's financial condition."  11 U.S.C. §

523(a)(2)(A).  Plaintiff's Motion seeks summary judgment under the actual fraud

component of § 523(a)(2)(A) against Defendant.  Plaintiff's argument can be

summarized as the idea that Defendant committed actual fraud by being the

recipient of fraudulent transfers from the ZeekRewards scheme.

The Fifth Circuit has stated that actual fraud may be proven by showing

that: (1) the debtor made a representation; (2) the debtor knew that the

representation was false at the time it was made; (3) the debtor made the

representation with the intent and purpose to deceive the creditor; (4) the

creditor relied on the representation; and (5) the creditor sustained a loss as the

proximate result of its reliance on the representation.  *Selenberg v. Bates (Matter*

*of Selenberg)*, 856 F.3d 393, 398 (5th Cir. 2017).  This is different than what is

usually required to show a fraudulent transfer.  "Equally important, the

common law also indicates that fraudulent conveyances, although a 'fraud,' do not require a misrepresentation from a debtor to a creditor." *Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. 356, 361 (2016). Despite these elements of actual fraud, the Supreme Court has ruled that "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Id*. at 359. Though it declined to adopt a definition of actual fraud for all times and circumstances, the Supreme Court did state that "'Actual fraud' has two parts: actual and fraud." *Id*. at 360. There is no real dispute that the transfers made to Defendant from the ZeekRewards scheme were fraudulent transfers encompassed within the term "actual fraud" as described in *Husky*. What is disputed is whether that fraud was "actual" on the part of Defendant.

For the fraud to be actual, Plaintiff must make a showing of wrongful intent on the part of the Defendant. *Id*. Specifically, the Supreme Court described this idea as follows:

> The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that "involv[es] moral turpitude or intentional wrong." *Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586 (1878). "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." *Ibid*. Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."

*Id*. This intent can be inferred from circumstantial evidence. *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287–88 (8th Cir. 1987) (abrogated on

other grounds). Reckless indifference to the truth can in some situations constitute a sufficient showing of wrongful intent. *In re Miller*, 39 F.3d 301, 305 (11th Cir.1994); *Norris v. First Nat'l Bank in Luling (In re Norris)*, 70 F.3d 27, 30 fn. 12 (5th Cir. 1995) (finding that reckless disregard for the truth combined with the sheer magnitude of the resultant misrepresentation may combine to create an inference of intent to deceive under § 523(a)(2)(B)); *see also Farmers & Merchants State Bank v. Perry (In re Perry)*, 448 B.R. 219, 226 (Bankr. N.D. Ohio 2011) ("'[W]illful blindness' does not provide a defense to an action brought under § 523(a)(2)(A) and may instead be used as a factor indicative of fraud.").

Plaintiff attempts to prove Defendant's wrongful intent by pointing to a variety of circumstantial evidence. First, Plaintiff argues that Defendant made no inquiries into ZeekReward's financial statements and this inaction is indicative of her turning a blind eye to its true nature.[39] Plaintiff also points to the fact that Defendant's received a substantial return on her investment, and argues Defendant must have realized the scheme's fraudulent nature in light of its high return rate.[40] Finally, Plaintiff argues that Defendant actively recruited others to join the scheme using a script created by ZeekRewards.[41]

Plaintiff also attempts to use the Ponzi scheme presumption to infer the wrongful intent of Defendant.[42] The Ponzi scheme presumption allows courts to

---

[39] Pl. Mot. Summ. J., ECF No. 19 at 23-24.
[40] *Id.* at 24.
[41] Pl. Reply Br., ECF No. 21 at 8.
[42] Pl. Mot. Summ. J., ECF No. 19 at 25.

presume the existence of intent to defraud when transfers are made in furtherance of a Ponzi scheme. This presumption has been upheld by numerous federal courts and is well settled law. *Janvey v. Brown*, 767 F.3d 430 (5th Cir. 2014); *Wing v. Dockstader*, 482 Fed. Appx. 361, 363 (10th Cir. 2012). However, the Ponzi scheme presumption applies only to the intent of the Ponzi scheme perpetrators, not to the intent of victims lured into the scheme. *See, e.g., Wiand v. Lee,* 753 F.3d 1194, 1201 (11th Cir. 2014); *In re AFI Holding, Inc.,* 525 F.3d 700, 704 (9th Cir. 2008); *S.E.C. v. Resource Dev. Int'l, LLC,* 487 F.3d 295, 301 (5th Cir. 2007); *In re Petters Co., Inc.*, 495 B.R. 887, 907 (Bankr. D. Minn. 2013); *In re Polaroid Corp.*, 472 B.R. 22, 40-41 (Bankr. D. Minn. 2012); *In re Dreier LLP*, 452 B.R. 391, 424 (Bankr. S.D.N.Y. 2011). For the presumption to apply Plaintiff must prove Defendant was one of the perpetrators of the ZeekRewards scheme. Plaintiff attempts to make this showing by repeating the same circumstances used to attempt to show intent. Plaintiff argues that because of Defendant's disproportionate profit, Defendant "knew – or at the very least, should have known, that she was committing a fraudulent act by her active participation in the ZeekRewards scheme."[43] Plaintiff also reiterates its claim that Defendant was obligated to recruit others to the scheme using a script created by ZeekRewards.[44]

---

[43] *Id..*
[44] *Id.* at 26-27.

Defendant strenuously denies that she was willfully ignorant of the true fraudulent nature of the scheme, and claims she had no knowledge of its nefarious nature.[45]  She argues instead she never reviewed the scheme's financial documents because she had no experience or ability to evaluate such statements.[46]  Moreover, Defendant reasonably points out that she should not be considered one of the perpetrators of the ZeekRewards scheme because the SEC itself stated that "Qualified Affiliates [had] no role in ZeekReward's operations"[47] and that "unbeknownst to its investors, ZeekRewards [was], in reality, a massive Ponzi scheme." *Id.*

What the Court is left with are two opposed factual interpretations regarding the intent of Defendant.  Movant's burden under the summary judgement standard has not been met.  There exist genuine issues of material fact whether Defendant possessed the intent necessary to commit actual fraud, and whether Defendant was a perpetrator of the ZeekRewards scheme such that the Ponzi scheme presumption might be applied against her. Consequently, this issue is inappropriate for summary judgement.

---

[45] Def. Obj., ECF No. 20 at 3.
[46] *Id.* at 4.
[47] Defendant was one such "qualified affiliate."  *Id.*

## VIII.  Constructive Trust

Finally, Plaintiff alleges that debt owed to it by Defendant is the subject of a constructive trust imposed in the original state court case.[48]  However, the Court will not consider this argument because Plaintiff failed to include this claim in their complaint.[49]  A party is not allowed to raise a claim in a summary judgment which was not pled in the operative complaint. *See Cutrera v. Board of Supervisors of La. State Univ.,* 429 F.3d 108, 113 (5th Cir. 2005) (claim raised for first time in the context of a summary judgment motion is "not properly before the court"); *Lawmaster v. Ward*, 125 F.3d 1341, 1345 fn. 2 (10th Cir.1997) (holding that the court will not consider claims first raised in a motion for summary judgment and not contained in the complaint); *Charles v. Rice*, 28 F.3d 1312, 1319 (1st Cir.1994) (affirming a district court's refusal to adjudicate an equal protection claim that plaintiff failed to assert in his complaint); FED. R. CIV. P. 56(a) (stating that "[a] party claiming relief may move . . . for summary judgment *on all or part of the claim*" (emphasis added)).  The timeframe for Plaintiff to amend their complaint as a matter of right has long since passed.  Additionally, Plaintiff has not sought leave to amend its complaint to include this claim regarding the existence of a constructive trust.  Consequently, the Court will not consider this issue.

---

[48] Pl. Mot. Summ. J., ECF No. 19 at 28.
[49] *See generally* Pl. Compl., ECF No. 1.

## IX.  Issues Precluded from Re-Litigation

For the previously mentioned reasons, Plaintiff's requested judgement in its favor as a matter of law must be denied.  Nevertheless, certain facts have been established.  The following facts are relevant to the issues before the Court and have been established in this proceeding under the guidelines of Local district Court Rule CV-56, as incorporated by Local Rule of Bankruptcy Procedure 7056(d).[50]  These facts will not be re-litigated at the trial for this adversary proceeding.

---

[50] Local District Court Rule CV-56 directs a movant to include a Statement of Undisputed Material Facts and to support such a statement with "appropriate citations to proper summary judgment evidence."  It directs a respondent that any response "should be supported by appropriate citations to proper summary judgment evidence."  With regard to the disposition of the motion, the rule states:

> (c) **Ruling**.  In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence.  The court will not scour the record in an attempt to unearth an undesignated genuine issue of material fact.

Thus, any failure by a respondent to controvert the material facts set forth in any of the motions or to support such a challenge by references to proper summary judgment evidence, results in the facts as claimed and supported by admissible evidence by the movant "admitted to exist without controversy."  E.D. TEX. LOCAL R. CV–56(c).

1. On November 20, 2020, Plaintiff filed a complaint to determine the dischargeability of a debt owed to it by the Defendant pursuant to 11 U.S.C. §§ 523(a)(19) and 523(a)(2)(A).[51]

2. On December 28, 2020, Defendant filed an answer to Plaintiff's complaint.[52]

3. On August 17, 2012, the Securities and Exchange Commission filed Case 3:12-cv-519, *Securities and Exchange Commission v. Rex Venture Group, LLC d/b/a ZeekRewards.com and Paul Burks*, in the United States District Court for the Western District of North Carolina, Charlotte Division.[53]

4. On August 17, 2012, the United States District Court for the Western District of North Carolina, Charlotte Division in Case 3:12-cv-519, *Securities and Exchange Commission v. Rex Venture Group, LLC d/b/a ZeekRewards.com and Paul Burks*, appointed Kenneth D. Bell as Receiver of over the assets and estate of ZeekRewards.[54]

5. Defendant invested a total of $1,570.65 into ZeekRewards.[55]

6. Defendant received in return a total of $32,752.04 from her participation in ZeekRewards.[56]

---

[51] Pl. Mot. Summ. J., ECF No. 19 at 4.
[52] *Id.*
[53] Pl. Mot. Summ. J., ECF No. 19 at exhibit D.
[54] *Id.*
[55] *Id.* at 6.
[56] *Id.*

7. Defendant was a net winner from the ZeekRewards scheme. [57]

8. The relief requested in the complaint arises out of a final judgment
   entered against the Defendant on August 14, 2017, in Case 3:14-cv-91,
   *Bell v. Disner, et. al.,* in the United States District Court for the Western
   District of North Carolina, Charlotte Division (the "Receiver Class
   Action").[58]

9. The final judgment against Defendant in the Receiver Class Action was
   for "Net Winnings" of $31,181.39 and Pre-Judgment Interest of
   $10,693.68, for a total final judgment amount of $41,875.07.[59] Pursuant to
   the terms of the final judgment, post-judgment interest accrues at the rate
   specified under 28 U.S.C. 1961 from the date of entry until the judgment
   is paid in full.[60]

10. The causes of action asserted by the receiver against Defendant in the
    Receiver Class Action were for violations of the North Carolina Uniform
    Fraudulent Transfer Act, for Common Law Fraudulent Transfer, and for
    imposition of a constructive trust.[61]

11. The November 29, 2016, order granting motion for summary judgment in
    the Receiver Class Action found that ZeekRewards operated as a Ponzi

---

[57] *Id.*
[58] Pl. Mot. Summ. J., ECF No. 19 at 5.
[59] Pl. Mot. Summ. J., ECF No. 19 at exhibit D.
[60] *Id.*
[61] *Id.*

scheme and that transfers to net winners occurred because of the
fraudulent scheme.[62]

12.  Defendant did not review financial statements (balance sheet, profit and
loss statement, income statement, statement of cash flows) nor state or
federal income tax returns of ZeekRewards prior to making her
investment in the ZeekRewards scheme.[63]

13. The November 29, 2016, order granting motion for summary judgment in
the Receiver Class Action found that defendants, including the Defendant
in this adversary, "did not provide 'reasonably equivalent value' for their
[net] winnings.[64]

14.  The November 29, 2016, order granting motion for summary judgment in
the Receiver Class Action granted summary judgment in favor of the
receiver on his cause of action for violations of the North Carolina Uniform
Fraudulent Transfer Act. [65]

15. The November 29, 2016, order granting motion for summary judgment in
the Receiver Class Action granted summary judgment in favor of the
receiver on his cause of action for a constructive trust. [66]  Specifically that
Court stated that:

---

[62] *Id.*
[63] *Id.*
[64] *Id.* at 6-7.
[65] *Id.* at 25.
[66] *Id.* at 27.

> "Imposing a constructive trust under the circumstances herein furthers the Receiver's ability to recover the assets of the ZeekRewards Ponzi scheme and distribute them to the net losers, thus making the victims as whole as possible. Accordingly, summary judgment in favor of the Receiver is appropriate." [67]

16. The November 29, 2016, order granting motion for summary judgment in the Receiver Class Action did not grant summary judgment in favor of the receiver on his cause of action for a common law fraudulent transfer.[68]

Specifically that Court stated that:

> "Likewise, the Court finds it unnecessary to analyze the Receiver's alternative claim for common law fraudulent transfer."[69]

## X. Conclusion

Based upon the Court's consideration of the pleadings, the summary judgment evidence submitted therewith, the relevant legal authorities, and for the reasons set forth herein, the Court concludes that the "Motion for Summary Judgement" filed by Plaintiff, Nationwide Judgement Recovery Inc., is hereby DENIED. Plaintiff failed to demonstrate it was entitled to a judgement as a matter of law regarding the dischargeability issues raised under 11 U.S.C. § 523(a)(19) and 11 U.S.C. § 523(a)(2)(A). Therefore, these claims must be determined through a trial on the merits.

---

[67] *Id.*
[68] *Id.* at 25.
[69] *Id.* at fn. 6.

However, numerous facts have been established through the summary judgment evidence tendered to the Court.  Because the Court has not granted the relief sought by the Plaintiff's "Motion for Summary Judgment," it is appropriate to state the material facts that are not genuinely in dispute pursuant to FED. R. CIV. P. 56(g).  These established facts as set forth in this memorandum shall not be re-litigated at the trial for this adversary proceeding. An appropriate order consistent with this opinion shall be entered by the Court.

Signed on 09/27/2022

_____

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE